Date signed September 16, 2005



NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

|  |  |  |
|---|---|---|
| In Re: | : |  |
| MICHAEL BROOKER |  | Case No. 05-19651 |
|  | : | Chapter 13 |
| Debtor |  |  |
| . . . . . . . |  |  |
| BANK ONE, N.A. | : |  |
| c/o OCWEN FEDERAL BANK, FSB |  |  |
| Movant | : |  |
| v. |  |  |
| MICHAEL BROOKER | : |  |
| Debtor/Respondent. | : |  |
| and |  |  |
| TRACYE ROBIN BROOKER | : |  |
| Co-Debtor/Respondent. | : |  |

**MEMORANDUM OF DECISION IN SUPPORT OF ORDER [44] GRANTING MOTION
FOR RELIEF FROM STAY TO PERMIT RATIFICATION OF FORECLOSURE SALE ON PROPERTY LOCATED
AT 904 MAHER COURT, FORT WASHINGTON, MD 20744, OR, IN THE ALTERNATIVE, ANNULMENT OF
THE AUTOMATIC STAY NUNC PRO TUNC TO APRIL 25, 2005, AND IMPOSING EQUITABLE SERVITUDE
ENTERED AUGUST 26, 2005, AND CORRECTED ORDER [50] ENTERED SEPTEMBER 14, 2005**

This matter came before the Court on the Motion for Relief from Stay to Permit Ratification of

Foreclosure Sale on Property Located at 904 Maher Court, Fort Washington, MD 20744 or, in the Alternative,

Annulment of Automatic Stay Nunc Pro Tunc to April 25, 2005 [4] ( the "Lift Stay Motion") filed by Bank One, N.A. (the "Creditor"), and the Response [13] thereto (the "Response") filed by the Debtor, Michael J. Brooker (the "Debtor").  A hearing was held on the Lift Stay Motion and Response on May 26, 2005.

The Court has heard the evidence, reviewed the exhibits, considered the materials submitted by the parties and had the benefit of the arguments of counsel.  On August 26, 2005, the Court entered its Order [44] Granting Motion For Relief from Stay to Permit Foreclosure Sale on Property Located at 904 Maher Court, Fort Washington, MD 20744, or in the Alternative, Annulment of the Stay, and Imposing Equitable Servitude, and on September 14, 2005, entered its Corrected Order [50] (together, the "Order").

In its Order, the Court stated that it would, contemporaneously or subsequently, set forth an explanation of its decision for the benefit of the parties and any reviewing court.  The Court now issues this Memorandum of Decision of its findings of fact and conclusions of law in compliance with Rule 7052(a) of the Federal Rules of Bankruptcy Procedure, made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**I.**     **FACTS**

The Court finds the facts stated herein based upon an evaluation of the evidence including the credibility of witnesses and the inferences which the Court has found reasonable to draw from the evidence.

A.    The Parties.

Michael Brooker is the Debtor in this chapter 13 case.  The case was commenced by voluntary petition filed on April 25, 2005.  Bank One, N.A. is the Creditor and movant in this contested matter brought against the Debtor and Tracye Brooker.  Tracye Brooker is the Debtor's spouse and Co-Debtor in this action (the "Co-Debtor" or "Spouse").  This contested matter was commenced by the filing of the Lift Stay Motion.  In the Lift Stay Motion, the Creditor seeks from Debtor relief from the automatic stay of Section 362, and seeks from the

2

Co-Debtor relief from the codebtor stay of Section 1301 of the Bankruptcy Code[1], so as to proceed with foreclosure on a deed of trust on residential real property located at 904 Maher Court, Fort Washington, MD 20744 (the "Property").

B.    The Operative Facts.

In a period of less than two years, the Debtor and his Spouse have filed five (5) separate, sequential individual bankruptcy cases in the United States Bankruptcy Court for the District of Maryland:

1. On August 19, 2003, the Debtor filed a chapter 13 petition, Case No. 03-18152.  This case was dismissed on October 14, 2003 for failure to complete required filings.

2. On  July 21, 2004, the Debtor filed another chapter 13 petition, Case No. 04-27295.  This case was dismissed on August 11, 2004 for failure to complete required filings.

3. On September 14, 2004, the Co-Debtor Spouse filed a chapter 13 petition, Case No. 04-31149.  On September 23, 2004 the case was voluntarily dismissed.

4. On February 8, 2005, the Co-Debtor Spouse filed a chapter 13 petition, Case No. 05-12666.  This case was dismissed on March 2, 2005 for failure to complete required filings.  It is significant to note that as a result of this dismissal, and by virtue of the Bankruptcy Code and Local Rules, the Co-Debtor became ineligible to file another bankruptcy petition until August 30, 2005.[2]

5. On April 25, 2005, the Debtor filed the instant chapter 13 case, Case No. 05-19651.[3]  This case was filed literally on the eve of the Creditor's scheduled foreclosure sale.

The Debtor concedes that each bankruptcy case was filed with the intention to prevent foreclosure on the Property.

The Creditor commenced  foreclosure on the Property and scheduled a foreclosure sale to take place

---

[1] Unless otherwise indicated, all section and chapter references herein are to the Bankruptcy Code, i.e., the Bankruptcy Reform Act of 1978, as amended, codified in title 11 of the United States Code.

[2] The Order Dismissing Case with Prejudice for Failure to Complete Required Filings [8] entered on March 2, 2005 in Case No. 05-12666, states: "pursuant to 11 U.S.C. §105(a) and §13079(c) and Local Bankruptcy Rule 1017-1, the above-captioned case [of Co-Debtor Tracye Brooker] under Chapter 13 is dismissed subject to 11 U.S.C. §109(g) that prohibits a new filing by an individual debtor for 180 days."

[3] It warrants mention that even in the instant case, it appears that the Debtor may be failing <u>again</u> to comply with bankruptcy requirements.  On June 10, 2005, the Chapter 13 Trustee filed a Motion to Dismiss this Case for Debtor's Failure to Appear at the Meeting of Creditors without Excuse [31].  A previously set hearing on this matter has been rescheduled for November 11, 2005.

3

on April 26, 2005.  On April 25, 2005,  the Debtor filed the instant chapter 13 case.  After the bankruptcy petition was filed, but before the sale took place, the Debtor called the substitute trustee who was conducting the foreclosure sale for the Creditor, and notified him of the Debtor's newly filed bankruptcy case.   On the morning of the sale, the substitute trustee conducted his own due diligence search for bankruptcies in the Court's "Pacer" system, and discerned that the Debtor had indeed filed a chapter 13 petition the day before.  It is undisputed that the Creditor had notice of the Debtor's bankruptcy filing before the sale.[4]

      Also on the morning of the foreclosure sale, in another exercise of due diligence, the substitute trustee conducted a title search on the Property.   The title search revealed that the most recent deed of record was a deed dated June 30, 2003.  Under that deed, the Property had been deeded in its entirety from the Debtor to the Co-Debtor.  Accordingly, based on the title search, as of the morning of the foreclosure sale, the Creditor and the substitute trustee believed that the Property was owned by the Co-Debtor and not the Debtor.  The substitute trustee also observed that since the Co-Debtor was prohibited from filing another bankruptcy case until August 30, 2005 (*See* f.n. 2, above), no automatic stay of the Bankruptcy Code protecting the record owner could be in effect to thwart the April 26, 2005 foreclosure sale.  Consequently, on April 26, 2005, a foreclosure sale was held which produced a bid-purchaser.  The Creditor seeks to ratify that foreclosure sale in the Circuit Court for Prince George's County, Maryland and to that end, filed the Lift Stay Motion.

---

[4]At the hearing, the substitute trustee, Jacob Geesing, testified as follows:

| | |
|---|---|
| QUESTION: | What transpired at the [foreclosure] sale? |
| MR. GEESING: | I was at the Courthouse.  I got a call [from my office] [. . .][My office] received a call from Mr. Brooker saying that he had filed for bankruptcy.  [. . .] I called him.  We hadn't conducted the auction yet.  [. . .] Apparently the bankruptcy was filed the day before [the foreclosure sale].  I had noticed that in the morning when I was searching the Pacer. |

Tr. of 5/26/05 Hr'g p. 34-37: 23 - 5.

4

The Creditor and the Debtor disagree whether the Debtor or his Spouse was "in title" to the Property at the time of sale.  The Debtor maintains that a Quitclaim Deed was executed on March 4, 2005 transferring the Property to the Debtor from his Spouse for $10.00.  They also disagree whether the Debtor advised the Creditor or substitute trustee of the existence of the Quitclaim Deed prior to the April 26, 2005 foreclosure sale.  The substitute trustee maintains that he specifically asked the Debtor whether he was "in title" to the Property when the Debtor reported his recent bankruptcy filing, and that the Debtor said he was not.  It is undisputed that the Quitclaim Deed, to the extent it existed on the sale date, was unrecorded.  In short, the Debtor posits that because he was "in title" under the Quitclaim Deed, that the Property was "property of the estate" under Section 541, and therefore that the Property was protected by the bankruptcy stay on the sale date.  On the other hand, the Creditor's Lift Stay Motion seeks permission to ratify the sale, and seeks alternatively the retroactive annulment (to April 25, 2005) of the stay of Section 362 and the codebtor stay of Section 1301, to the extent they existed at the time of sale.

The Court cannot find that a Quitclaim Deed was executed by the Co-Debtor in favor of the Debtor in March of 2005.  The testimony of the Debtor and his Spouse on this point is not credible, and no corroborative evidence was presented.  (The notary who supposedly notarized the Quitclaim Deed did not appear to testify at the hearing.)  There was no logical reason given why this Quitclaim Deed would have been executed, or why it would have been left unrecorded.  The Court simply does not believe the testimony of the Debtor that the Deed was left unrecorded for almost two months on purpose, on the advice of a financial institution from which the Debtor and his Spouse supposedly were seeking refinancing.  Allegedly, the refinance company told the Debtor not to record because the company would do the recordation properly at the time of refinance.  Again, this testimony is uncorroborated. (The purported advisor from the refinance company who might have substantiated the existence of the Deed, as well as his alleged advice not to record the deed, was not produced.)  Further, the Court believes the testimony of the substitute trustee that the Debtor did not mention the Quitclaim Deed when he informed the substitute trustee just prior to the foreclosure sale about his

5

latest bankruptcy filing.  The Court finds credible the testimony of the Creditor that the first time the Creditor ever heard of the Quitclaim Deed was in the Debtor's Response to the Lift Stay Motion, and that the first time the Creditor ever saw the Quitclaim Deed was when it was produced by the Debtor as an exhibit in connection with this contested matter.  The Court finds that disclosure about the Quitclaim Deed was not made to the Creditor prior to the April 26, 2005 foreclosure sale, and indeed that the Quitclaim Deed did not then exist.  In keeping with this view of the facts, the Creditor would be entitled to proceed with ratification because on the sale date, the Property would have been the property of the Co-Debtor, who was not then a debtor (and who was precluded from becoming one again until August 30, 2005).

However, as discussed herein, even if the Court assumes that a Quitclaim Deed to the Property had been executed on March 4, 2005 by the Co-Debtor in favor of the Debtor for $10.00 (and that the Deed remained unrecorded on April 26, 2005), the Court would still grant the relief requested in the Lift Stay Motion.  Stated differently, even assuming the existence of the unrecorded Deed, the Creditor would be entitled to *nunc pro tunc* annulment of the automatic stay and the codebtor stay given the facts and circumstances of this case.  This is the relief granted by the Court.

II.     **ISSUES**

The Court must decide whether the Debtor held equitable or legal title to the Property at the time he filed the instant chapter 13 case, and whether the Property constituted property the estate upon which the Creditor foreclosed without consent or a court order granting stay relief.  If the Property was not property of the estate, the Court must decide whether to enter an order allowing the Creditor to consummate the sale now by authorizing ratification.  If the Property was property of Debtor's estate at the time of the foreclosure sale, the Court must decide whether given the facts and circumstances of this case, the stays should be annulled *nunc pro tunc*, thereby permitting the Creditor to proceed now with ratification.

6

**III.**   **LEGAL PRINCIPLES**

    A.   The Applicable Law

A debtor's bankruptcy estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. §541.  The legal and equitable interests of a debtor at the commencement of a bankruptcy case are defined and created according to state law. *Butner v. United States*, 440 U.S. 48 (1979).  This Court looks to Maryland law to determine if the instant Debtor held a legal or equitable interest in the Property, by virtue of an unrecorded quitclaim deed, at the time he filed his bankruptcy petition.

    B.   Maryland Property Law

Under Maryland law, an unrecorded deed conveys an equitable interest upon its delivery to the grantee, but subordinate to any recorded transfer made later to a party without knowledge of the unrecorded deed.  *See Price v. McDonald*, 1 Md. 403, 414 (Md. 1851) (an equitable claim will be enforced in a court of equity, except against a *bona fide* purchaser without notice.)  *See* Md. Code Ann. Real Prop. §3-202-203 (2004) .  Under Maryland law, the unrecorded Quitclaim Deed dated March 4, 2005 would have conveyed to the Debtor at least an equitable interest in the Property which interest the Debtor held at the time he commenced the present bankruptcy case.

    C.   The Bankruptcy Framework

Section 541 of the Bankruptcy Code provides that a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."  Accordingly, applying Maryland property law in the context of this Bankruptcy Code provision, Debtor's equitable interest in the Property constituted property of Debtor's bankruptcy estate under Section 541 when he filed his petition. The Property was protected by the automatic stay of Section 362, and incidentally, the co-debtor stay of Section 1301 was invoked given the Spouse's codebtor status.[5]

---

[5] The Stay Relief Motion at Paragraph 4 states: "Tracye Brooker is the Co-Debtor in this action." The Debtor's Response at Paragraph 2 admits this allegation.

7

The filing of a bankruptcy petition creates an automatic stay that "serves as an injunction [to protect] the debtor, debtor's property and property of the estate from certain creditor actions." *In re Thompson-Mendez*, 321 B.R. 814 (Bankr. D. Md. 2005). The filing of a consumer bankruptcy petition under chapter 13 also creates a codebtor stay under Section 1301 that protects nondebtors who are liable with the debtor on consumer debts. Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d Ed. (2000 & Supp. 2004) at p. 84.1. (The automatic stay of Section 362 and the codebtor stay of Section 1301 are together sometimes referred to herein as the "stays.") The Creditor's post-petition foreclosure sale of Property without having obtained consent or court-ordered relief, violated the stays. Given the aforesaid findings of fact, however, including the Creditor's pre-sale due diligence into "Pacer" and its title search, the Court finds that the Creditor's violation was not a knowing violation of the stay.

Actions taken in violation of the automatic stay are void. *In re Bennett*, 317 B.R. 313 (Bankr. D. Md. 2004); *see also In re Lampkin*, 116 B.R. 450 (Bankr. D. Md. 1990). However, post-petition violations of the automatic stay may be validated if the stay is "annulled" retroactively. *In re Williams*, 323 B.R. 691 (B.A.P. 9th Cir. 2005). Section 362(d) states that a court may terminate, <u>annul</u>, modify, or condition an automatic stay if a party in interest sets forth cause. 11 U.S.C. §362(d). The codebtor stay of Section 1301 may similarly be annulled for cause shown. *In re Allen*, 300 B.R. 105 (Bankr. D. D.C. 2003).

The decision whether to "grant retroactive relief from the [stay] under §362(d) is a decision committed to the discretion of the bankruptcy court." *In re Williams,* 323 B.R. at 700. In determining whether to annul a stay, courts have identified various factors. The Ninth Circuit Bankruptcy Appellate Panel adopted "a balancing of the equities approach for analyzing a request for retroactive stay relief, and identified two factors to be considered by the bankruptcy court: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *In re Williams*, 323 B.R. at 700, quoting from *In re Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, 1055-1056 (9th Cir. 1997). Additional factors considered by courts have included: "the number of [a debtor's] bankruptcy filings; the extent of any prejudice to a bona fide purchaser; the debtor's overall good faith; the

8

debtor's compliance with the Code; how quickly the creditor moved for annulment; and how quickly the debtor moved to set aside the transfer." *In re Williams*, 323 B.R. at 700, *citing In re Fjeldsted*, 293 B.R. 12, 24-25 (9th Cir. BAP 2003).  Further, "in any given case, one factor may so outweigh the others as to be dispositive."  *Id.*

In *In re Williams*, a chapter 13 debtor sought to recover damages for a creditor's violation of the automatic stay.  The debtor resided in a condominium purchased in 1995, deeded to the debtor's fiancee on April 21, 1999 and quitclaim deeded back to the debtor that same day. The deed to the debtor was unrecorded. When the debtor failed to pay homeowners dues, the creditor gave notice of intent to conduct a non-judicial foreclosure sale.  The debtor filed for bankruptcy two days prior to the scheduled foreclosure sale.  The creditor proceeded with the non-judicial sale with full knowledge of the debtor's bankruptcy filing.  The bid-purchaser brought an action against the debtor in state court for unlawful detainer which resulted in a judgment for the bid-purchaser.  The bid-purchaser, having been successful in state court, took possession of the premises until the bankruptcy court issued an order that allowed the debtor to return to the property.  Subsequently, the debtor's bankruptcy case was dismissed for failure to comply with bankruptcy requirements whereupon the automatic stay was terminated.

Upon termination of the automatic stay, the bid-purchaser brought an action in state court to quiet title and to cancel the debtor's deed.  The debtor proceeded to file his third bankruptcy petition.  The bid-purchaser moved for relief from stay to "obtain possession" of the premises and to annul the automatic stay.  The debtor opposed the motion and argued that the bid-purchaser had violated the automatic stay in debtor's second bankruptcy case. 323 B.R. at 695. The bankruptcy court annulled the stay, and in so doing, reviewed a number of the aforementioned factors.  The debtor had filed multiple (three) bankruptcy cases, each as a means to avoid foreclosure and eviction.  The debtor was unable to confirm a plan.  The debtor had engaged in  numerous litigation tactics to avoid eviction, including filing actions in state court.   Finally, the debtor had not moved to set aside the foreclosure sale as void.  *Id* at 701-702.

Relief from the automatic stay may be granted for "cause," which is not defined specifically by Section 362.  "Bad faith" by a debtor in the filing or conduct of his bankruptcy may constitute "cause" for relief from

9

the automatic stay.  *In re AUFCMP Church*, 184 B.R. 207, 218 (Bankr. D. Del. 1995), *citing In re Dixie Broadcasting, Inc.*, 871 F. 2d 1023, 1027 (11th Cir. 1989), *cert. denied* 493 U.S. 853, 110 S. Ct. 154, 107 L. Ed. 2d 112 (1989).  Bad faith, based on the pre-petition transfers of assets to a different debtor has been found when "the substantive rights of any of the creditors to assets, available prior to the transfer of the property, have been eroded by the transfer and subsequent [bankruptcy] filing."  *In re Allen,* 300 B.R. 105 (Bankr. D.D.C. 2003), *citing In re Franklin Mortgage & Inv. Co., Inc*., 143 B.R. 295, 300 (Bankr. D.D.C. 1992).

In *Allen*, the debtor received a deed conveying to her a 50% ownership interest in her son's home, only "days before" she filed her bankruptcy case.  300 B.R. at 111.  At the time of the conveyance, the debtor's son was in default in payment under a note secured by a deed of trust on the property, but he was  ineligible to file for bankruptcy.  Based on the default, the creditor who was unaware of the debtor's interest in the property, conducted a foreclosure sale on the property without obtaining stay relief.  The property was sold to a bid purchaser.  The bankruptcy court was later asked to annul to the stay.

The court determined that the third party purchaser would be unfairly prejudiced.  It found that the debtor had engaged in what has sometimes been called  "new debtor syndrome " - a scenario in which a former debtor who has become ineligible to file bankruptcy conveys property to another individual (e.g., a mother or spouse), who then becomes a new debtor by filing a bankruptcy petition to protect the property from foreclosure.  The court in  *Allen*  found that the debtor's conduct constituted an abuse of the bankruptcy system and was an effort to frustrate and delay the creditor and third party purchaser.  The court annulled the stay and the codebtor stay.  *Id*. at 123.

D. Equitable Servitude

In *In re Yimam,* 214 B. R. 463 (Bankr. D. Md. 1997), this Court (the Honorable Paul Mannes), fashioned an elegant remedy to prevent continuing abuse of the bankruptcy system by a chapter 13 debtor and the debtor's nonfiling spouse who between them had filed seven individual bankruptcy cases designed to thwart creditor foreclosure action on their residence. Relying upon reasoning in *In re Snow* (*Great Western Bank v. Snow*), 201 B.R. 968 (Bankr. C. D.  CA. 1996), this Court issued an  *in rem* order that operated as an "equitable

10

servitude" on property "to preclude the debtor and his successors from taking advantage of the automatic stay . . . for a period sufficient to enable the creditor holding the secured claim to consummate a foreclosure." 214 B.R. at 466. The equitable servitude consisted of placing a restriction on the subject property such that the filing of a bankruptcy case by an entity would not extend the protection of the automatic stay to that property for a given period, and would not thwart any foreclosure action then pending or later filed.[6]

In *Yimam*, as noted, the debtor and her spouse had filed numerous individual bankruptcy cases and had failed to comply with various bankruptcy requirements. The *Yimam* case arose in the context of a trustee's motion to dismiss, but is not limited in its application to cases in that procedural posture. *Yimam* should be equally applicable to a case in a different procedural posture, e g. to a lift stay case, or indeed to any case in which the imposition of an equitable servitude would curb a similar abuse and permit sufficient time (where equitable) for a creditor to consummate a foreclosure.

## IV.   DISCUSSION AND CONCLUSION

This Court finds grounds for retroactively annulling the automatic stay and codebtor stay to validate the April 26, 2005 sale, and permit ratification of the Creditor's foreclosure sale in Prince George's County.

In the instant case, Debtor and Co-Debtor together have filed *five* bankruptcy cases. Neither party ever successfully reorganized. The Debtor has failed to meet even the minimal demands of bankruptcy, such as filing the routine documents and appearing at meetings of creditors. The Debtor has admitted that his purpose in filing his bankruptcy petitions has been to avoid imminent foreclosures. On March 4, 2005, almost immediately after Co-Debtor's second bankruptcy case was dismissed, the Co-Debtor conveyed the subject Property via Quitclaim Deed to the Debtor for $10.00. The Debtor then proceeded to file his third bankruptcy petition on April 25, 2005, and sought to evade an imminent foreclosure sale on April 26, 2005. The Debtor and Co-Debtor utilized a Quitclaim Deed to convey an interest in the subject Property to the Debtor, who was

---

[6]The Court made clear that the equitable servitude did not preclude the debtor or spouse from filing another bankruptcy petition when permitted by law to do so, (e.g., when any time bars to filing elapsed), and did not bar sale or refinance of the property. *Id.* at 467.

11

eligible to file bankruptcy, and thus evaded the Co-Debtors's existing bar against filing.  The Debtor has engaged in dilatory and evasive tactics.  The Court deems these actions to have been inequitable, prejudicial to the Creditor, and abusive of the privileges afforded by bankruptcy.  In their totality, they constitute bad faith on the part of the Debtor and CoDebtor in the filing and conduct of case(s) under title 11.

The Creditor, on the other hand, has acted reasonably and responsibly.  On its own and in concert with the substitute trustee, the Creditor has performed due diligence right up to the day of sale  (i.e., checked the Court's "Pacer" system for new bankruptcies by the Co-Debtor and Debtor, and performed a title search to corroborate its belief that the Debtor did not own the Property).  The Creditor did not know of the alleged Quitclaim Deed at the time of sale and acted in the good faith belief that the Debtor did not own the Property.  The Creditor acted timely in seeking stay relief/annulment.  The Creditor will be unfairly prejudiced if the consummation of this foreclosure sale is permitted to be thwarted.

Consistent with holdings in cases such as *Nat'l Envtl. Waste Corp., Williams* and *Allen*, *all supra*, the Court finds in this case factors demonstrative of bad faith on the Debtor's and Co-Debtor's part.  The patterns exhibited by the Debtor and Co-Debtor and their actions as catalogued above constitute bad faith, and are compelling cause for the Court to lift the stay and the codebtor stay, and to exercise its discretion to annul the automatic stay and the codebtor stay retroactively.

The Court also finds in the circumstances of this case, consistent with the *Yimam* case, *supra.*, that reason exists to impose an equitable servitude on the Property for the period through August 31, 2006, to permit the Creditor to conclude its foreclosure case.  Such remedy is necessary and appropriate to provide the Creditor with complete  relief given that the Co-Debtor is again eligible to file another bankruptcy case as of August 30, 2005.  (*See* f.n. 2, *supra.*).  Further filing(s) and abuse of the automatic stay to thwart the Creditor's foreclosure would be possible absent such *in rem* relief.  It would be inequitable to permit further abuse of the system and prejudice to the Creditor.

The Court will grant Bank One N.A.'s Motion for Relief from Stay to Permit Ratification of Foreclosure Sale on Property Located at 904 Maher Court, Fort Washington, MD 20744 or, in the Alternative, Annulment

12

of Automatic Stay Nunc Pro Tunc to April 25, 2005 and allow Creditor to proceed with State Court ratification of the foreclosure sale. Annulment of the automatic stay and codebtor stay is appropriate based on the foregoing findings, as is the imposition of an equitable servitude on the subject real property for the specified period.

An appropriate order has been entered.

cc:
Michael Brooker, Debtor
Tracye Brooker, Co-Debtor
Eric Soderberg, Esq.
Gene Jung, Esq
Chapter 13 Trustee
US Trustee

**END OF MEMORANDUM**